IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | 3:11-CR-00026-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **TOMMY LEE VASQUEZ,** | |
| Defendant. | |

**S. AMANDA MARSHALL**
United States Attorney
**RYAN W. BOUNDS**
**JOHNATHAN S. HAUB**
Assistant United States Attorney
1000 S.W. Third Ave., Ste 600
Portland, OR 97204
(503) 727-1000

    Attorneys for Plaintiff

1 - OPINION AND ORDER

**STEVEN T. WAX**
Federal Public Defender
**C. RENEE MANES**
Assistant Federal Defender
101 S.W. Main Street
Suite 1700
Portland, OR  97201
(503) 326-2123

       Attorneys for Defendants

**BROWN, Judge.**

    This matter comes before the Court on Defendant's Motion (#49) to Dismiss Indictment:  (1) Preservation of Motion to Dismiss in Entirety (for alleged prosecutorial misconduct); and (2) Motion to Dismiss Count One.  For the reasons that follow, the Court **GRANTS** Defendant's Motion to Dismiss Count 1 of the Superseding Indictment as a matter of law.  The Court will address the remaining part of Defendant's Motion (#49) to Dismiss that is based on alleged prosecutorial misconduct in a separate order.

**BACKGROUND**

    On November 21, 2010, approximately three weeks after Defendant Tommy Lee Vasquez arrived at Federal Correctional Institute (FCI) Sheridan, Defendant and another inmate, Theodore Vickers, engaged in a verbal altercation regarding the subject of "burpees" (a style of exercise) after which they were involved in a physical altercation in and outside of a television room

2 - OPINION AND ORDER

lasting approximately one minute.

After the physical altercation ended, Bureau of Prisons (BOP) Corrections Officers J. Jensrud and M. Michaelson found Vickers shirtless and bleeding on the television-room floor. Vickers was taken to the FCI Sheridan medical office and then transported to a local hospital and finally to Legacy Emmanuel Hospital in Portland where he underwent emergency surgery. Defendant was taken to the Secure Housing Unit (SHU).

On January 20, 2011, a grand jury charged Defendant with one count of Assault Resulting in Serious Bodily Injury in violation of 18 U.S.C. § 113(a)(6). In a Superseding Indictment dated December 6, 2011, a grand jury charged Defendant with one count of Assault with a Dangerous Weapon in violation of 18 U.S.C. § 113(a)(3) and one count of Assault Resulting in Serious Bodily Injury in violation of 18 U.S.C. § 113(a)(6).

On December 22, 2011, Defendant filed a Motion to Dismiss Indictment: (1) Preservation of Motion to Dismiss in Entirety; and (2) Motion to Dismiss Count One. The Court heard oral argument on Defendant's Motion on January 27, 2012.

## DISCUSSION

As to Count 1 of the Superseding Indictment, the government asserts Defendant lifted Vickers over Defendant's shoulder and slammed Vickers to the ground head first. According to the

3 - OPINION AND ORDER

government, therefore, Defendant used the floor as a dangerous weapon.

Defendant moves to dismiss Count 1 of the Superseding Indictment on the ground that a floor is not a dangerous weapon as a matter of law. To support his argument, Defendant relies on *United States v. Rocha*, 598 F.3d 1144 (9th Cir. 2010).

In *Rocha* the defendant participated in a brawl in a federal correctional facility during which the defendant came up behind the victim, grabbed the victim by his feet, and pulled the victim's feet out from under him causing the victim to slam his head on the concrete floor. The government charged the defendant with, among other things, Assault with a Dangerous Weapon in violation of 18 U.S.C. § 113(a)(3). *Id*. at 1147. The jury returned a special verdict "finding that [the defendant] used his hands, but not the concrete floor, as a dangerous weapon and convicted him of assault with a dangerous weapon." *Id*. at 1153. The Ninth Circuit concluded on appeal that the defendant's use of his bare hands did not constitute the use of a dangerous weapon under § 113(a)(3). The Ninth Circuit reasoned:

> Title 18 gives neither a definition of "assault" nor "dangerous weapon." We adopted the common law definition of assault as "a willful attempt to inflict injury upon the person of another also known as an attempt to commit a battery," *Lewellyn*, 481 F.3d at 697 (internal quotation marks omitted), and we interpreted "dangerous weapon" to mean any object that is used in a way to inflict great bodily harm, *United States v. Smith,* 561 F.3d 934, 939 (9th Cir. 2009)(*en banc*).

*Id*. at 1154-55. The Ninth Circuit explained:

> "The determination whether an object constitutes a 'dangerous weapon' turns not on the object's latent capability alone, but also on the manner in which the object was used. Objects that are not dangerous weapons *per se* are deemed to be 'dangerous weapons' within the meaning of [18 U.S.C. § 113(a)(3)] when used in a manner likely to endanger life or inflict great bodily harm. Thus, the term 'dangerous weapon' is not restricted to such obviously dangerous weapons as guns, knives, and the like, but can include virtually any object given appropriate circumstances."

*Id*. at 1155 (quoting *United States v. Riggins*, 40 F.3d 1055, 1057 (9th Cir. 1994)). Nevertheless, the court concluded the use of body parts could not constitute a dangerous weapon because doing so would essentially merge every assault with intent to do bodily harm with the crime of assault with a dangerous weapon because it would be difficult "to see how someone could be accused of assault without using a body part in some way." *Id*. at 1157. In explaining its conclusion, the Ninth Circuit stated:

> Congress has separately punished "assault by striking, beating, or wounding;" "assault resulting in serious bodily injury;" and "simple assault." 18 U.S.C. § 113(a)(4), (5), and (6). As we think of the potential uses of various parts of the body - head butting, **body slamming**, scratching, punching, strangling, elbowing, kneeing, kicking - each assaultive act can be accomplished without an additional weapon, tool, or equipment such as helmets, pads, or shoes. Yet each act becomes more potent with the use of a separate implement. We think that when Congress used the term "dangerous weapon" it contemplated generally the situation in which the defendant used a weapon or utilized some other object as a weapon to augment the force of his physical

5 - OPINION AND ORDER

assault.

*Id.* at 1157 (emphasis added).

Here the government alleges Defendant lifted Vickers over Defendant's shoulder and slammed him to the floor head first. Although the impact of Vickers's head against the floor likely caused him serious bodily injury, Defendant contends the floor in this context is not a "dangerous weapon" within the meaning of § 113(a)(3) because, even in the light most favorable to the government, Defendant merely used his "body parts" - his arms - to lift Vickers and to slam him to the floor. The Court agrees. Defendant's alleged move is nothing more than a "body slam,"[1] which the Ninth Circuit specifically included in *Rocha* in its list of assaultive acts that "can be accomplished without an additional weapon." In light of (1) the Ninth Circuit's conclusion that body slamming, such as occurred here, is the kind of act that Congress has separately punished under § 113(a)(4), (a)(5), or (a)(6) and (2) the Ninth Circuit's conclusion that the use of body parts when "body slamming" does not constitute use of a dangerous weapon because that reasoning would essentially merge every assault with intent to do bodily harm with the crime of assault with a dangerous weapon, this Court concludes as a matter

---

[1] The *American Heritage Dictionary* defines "body slam" as "[a] wrestling move in which one wrestler picks up and throws the other to the floor." *The Am. Heritage Dictionary* 205 (5th ed. 2011).

of law that, under these facts, the floor cannot be a dangerous weapon as alleged in the Superseding Indictment.

Accordingly, the Court grants Defendant's Motion to Dismiss Count 1 of the Superseding Indictment.

**CONCLUSION**

For these reasons, the Court **GRANTS** Defendant's Motion (#49) to Dismiss Count 1 of the Superseding Indictment and will address the remaining part of Defendant's Motion to Dismiss based on alleged prosecutorial misconduct in a separate order.

Because the government may wish to seek an interlocutory appeal of the Court's Order dismissing Count 1 of the Superseding Indictment before jeopardy attaches in a jury trial of Count 2, the Court **DIRECTS** the government to advise the Court **no later than February 15, 2012,** as to whether it intends to proceed to trial on Count 2 on February 28, 2012, or whether it will seek an interlocutory appeal of this Opinion and Order to the Ninth Circuit.

IT IS SO ORDERED.

DATED this 8th day of February, 2012.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

7 - OPINION AND ORDER